1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                     February 2017 Grand Jury

11   UNITED STATES OF AMERICA,        SA CR No. 17-53

12              Plaintiff,            I N D I C T M E N T

13        v.                          [18 U.S.C. § 371: Conspiracy; 18
                                       U.S.C. §§ 1343, 1346: Wire Fraud
14   DAVID HOBART PAYNE,              Involving Deprivation of Honest
                                       Services; 18 U.S.C. § 1952(a)(3):
15              Defendant.            Use of an Interstate Facility in
                                       Aid of Racketeering Enterprises;
16                                     18 U.S.C. § 2: Aiding and Abetting
                                       and Causing an Act to be Done]
17

18        The Grand Jury charges:

19                            COUNT ONE

20                       [18 U.S.C. § 371]

21   A.   INTRODUCTORY ALLEGATIONS

22        At all times relevant to this Indictment:

23        1.   Healthsmart Pacific Inc., doing business as Pacific

24   Hospital of Long Beach ("Pacific Hospital"), was a hospital located

25   in Long Beach, California, specializing in surgeries, particularly

26   spinal and orthopedic surgeries.  From at least in or around 1997 to

27   October 2013, Pacific Hospital was owned and/or operated by Michael

28   D. Drobot ("Drobot") and/or an unindicted co-conspirator.  James

1  Canedo ("Canedo") was Pacific Hospital's Chief Financial Officer
2  ("CFO").

3      2.   International Implants LLC ("I2") was a limited liability
4  company, controlled by Drobot and headquartered in Newport Beach,
5  California, that purchased implantable medical devices for use in
6  spinal surgeries from original manufacturers and sold them to
7  hospitals, particularly Pacific Hospital.

8      3.   Pacific Specialty Physician Management, Inc. ("PSPM") was a
9  corporation, owned and controlled by Drobot and others and
10 headquartered in Newport Beach, California, that provided
11 administrative and management services for physicians' offices.

12     4.   Industrial Pharmacy Management LLC ("IPM") was a limited
13 liability company, owned and controlled by Drobot, Michael R. Drobot
14 ("Drobot Jr."), and others and headquartered in Newport Beach,
15 California, that operated and managed a physician dispensing program.

16     5.   California Pharmacy Management LLC ("CPM") was a limited
17 liability company, owned and controlled by Drobot and Drobot Jr. and
18 headquartered in Newport Beach, California, that operated and managed
19 a physician dispensing program.

20     6.   The California Workers' Compensation System ("CWCS") was a
21 system created by California law to provide insurance covering
22 treatment of injury or illness suffered by individuals in the course
23 of their employment.  Under the CWCS, employers were required to
24 purchase workers' compensation insurance policies from insurance
25 carriers to cover their employees.  When an employee suffered a
26 covered injury or illness and received medical services, the medical
27 service provider submitted a claim for payment to the relevant
28 insurance carrier, which then paid the claim.  Claims were submitted

1  to and paid by the insurance carriers either by mail or

2  electronically.   The CWCS was governed by various California laws and

3  regulations.

4     7.   The California State Compensation Insurance Fund ("SCIF")

5  was a non-profit insurance carrier, created by the California

6  Legislature, that provided workers' compensation insurance to

7  employees in California, including serving as the "insurer of last

8  resort" under the CWCS system for employers without any other

9  coverage.

10     8.   SCIF, other workers' compensation insurance carriers, and

11  personal injury insurers, along with other public and private plans

12  and contracts, were "health care benefit programs" (as defined in 18

13  U.S.C. § 24(b)), that affected commerce.

14     9.   California law, including but not limited to the California

15  Business and Professions Code, the California Insurance Code, and the

16  California Labor Code, prohibited the offering, delivering,

17  soliciting, or receiving of anything of value in return for referring

18  a patient for medical services.

19     10.  Defendant DAVID HOBART PAYNE ("defendant PAYNE") was an

20  orthopedic surgeon who owned and operated Industrial Orthopedics

21  Spine and Sports Medicine ("Industrial Orthopedics"), a medical

22  clinic located in Santa Ana, California specializing in orthopedic

23  spinal surgery and orthopedic sports medicine.

24     11.  David H. Payne, MD, Inc. was a California professional

25  corporation owned and operated by defendant PAYNE.

26  B.  OBJECTS OF THE CONSPIRACY

27     12.  Beginning on a date unknown but at least as early as in or

28  around May 2008, and continuing through at least in or around April

3

2013, in Orange and Los Angeles Counties, within the Central District
of California, and elsewhere, defendant PAYNE, Drobot, Drobot Jr.,
and Canedo, together with others known and unknown to the Grand Jury,
knowingly combined, conspired, and agreed to commit the following
offenses against the United States: Honest Services Mail Fraud and
Wire Fraud, in violation of Title 18, United States Code, Sections
1341, 1343, and 1346; and Use of an Interstate Facility in Aid of
Racketeering, in violation of Title 18, United States Code, Sections
1952(a)(1), (a)(3).

C.   MANNER AND MEANS OF THE CONSPIRACY

13. The objects of the conspiracy were to be carried out, and
were carried out, in the following ways, among others:

a.   Drobot and other co-conspirators working with Drobot
and/or at his direction offered to pay kickbacks to defendant PAYNE
and other doctors, chiropractors, workers' compensation and personal
injury attorneys, marketers, and others in return for referring
workers' compensation patients to Pacific Hospital for spinal
surgeries, other types of surgeries, magnetic resonance imaging,
toxicology, durable medical equipment, and other services, to be paid
through the CWCS. For spinal surgeries, typically, Drobot offered to
pay a kickback of approximately $15,000 per lumbar fusion surgery and
$10,000 per cervical fusion surgery, provided that equipment
distributed through I2 was used in the surgery. If non-I2 equipment
was used in the surgery, Drobot offered lesser kickback amounts.

b.   Influenced by the promise of kickbacks, defendant
PAYNE and other doctors, chiropractors, workers' compensation and
personal injury attorneys, marketers, and others referred patients
insured through the CWCS and other health care benefit programs to

4

1  Pacific Hospital for spinal surgeries, other types of surgeries, and
2  other medical services and, at times, performed the surgeries.  The
3  patients were not informed that the medical professionals had been
4  offered and received kickbacks to induce them to refer the surgeries
5  and other medical services to Pacific Hospital.  That information
6  would have been material to those patients, to whom defendant PAYNE
7  and other doctors owed a fiduciary duty to disclose any financial
8  conflicts of interest.

9          c.    The surgeries and other medical services were
10  performed on the referred patients at Pacific Hospital.

11          d.    Pacific Hospital and defendant PAYNE submitted claims,
12  by mail and electronically, to SCIF and other health care benefit
13  programs for: (1) in the case of Pacific Hospital, payment of the
14  costs of the surgeries and other medical services; and (2) in the
15  case of defendant PAYNE, payment of professional fees associated with
16  surgeries he performed at Pacific Hospital.

17          e.    As defendant PAYNE and the other co-conspirators knew
18  and intended, and as was reasonably foreseeable to them, in treating
19  patients and submitting claims for payment using the mails, wire
20  communications, and other facilities in interstate commerce, Drobot,
21  defendant PAYNE, and other co-conspirators concealed material
22  information from patients, SCIF, and other health care benefit
23  programs, including the fact that Drobot offered, paid, or caused to
24  be paid, kickbacks to defendant PAYNE and others for the referral of
25  surgeries and other medical services to Pacific Hospital for which
26  Pacific Hospital and defendant PAYNE were submitting claims.

27          f.    The health care benefit programs paid Pacific
28  Hospital's and defendant PAYNE's claims, by mail and electronically.

1          g.    Drobot and others paid and caused others to pay
2    kickbacks -- using the mails and other facilities in interstate
3    commerce -- to defendant PAYNE and other doctors, chiropractors,
4    marketers, and others who had referred patients to Pacific Hospital
5    for surgeries and other medical services.

6          h.    To conceal the nature of the kickback payments from
7    both health care benefit programs and patients, Drobot, through one
8    of the companies he owned and/or operated, entered into bogus
9    arrangements with the doctors, including defendant PAYNE,
10   chiropractors, marketers, and others.  The services discussed as part
11   of those arrangements were, in fact, generally not provided; rather,
12   the compensation was paid, entirely or in part, depending on the
13   arrangement, to cause defendant PAYNE to do surgeries at Pacific
14   Hospital.  The bogus arrangements defendant PAYNE and Drobot entered
15   into included, but were not limited to, a collections agreement and a
16   physician office dispensing program management agreement.

17         i.    Drobot and others kept records of the number of
18   surgeries and other medical services performed at Pacific Hospital
19   due to referrals from the kickback recipients, as well as amounts
20   paid to the kickback recipients for those referrals.  Periodically,
21   Drobot and others amended the bogus contracts with the kickback
22   recipients to increase or decrease the amount of agreed compensation
23   described in the contracts, in order to match the amount of kickbacks
24   paid or promised in return for referrals.  Drobot paid and caused the
25   kickbacks to be paid through entities including IPM, I2, and Pacific
26   Hospital.

27   D.   EFFECTS OF THE CONSPIRACY
28         14.   Had SCIF and the health care benefit programs known the

6

1  true facts regarding the payment of kickbacks for the referral of
2  patients for surgeries and other medical services performed at
3  Pacific Hospital, they would have subjected the claims to additional
4  review, would not have paid the claims, and/or would have paid a
5  lesser amount on the claims.

6      15.  From 2005 to in or around April 2013, Pacific Hospital
7  billed health care benefit programs at least approximately $580
8  million in claims for spinal surgeries and other medical services
9  that were the result of the payment of a kickback.  Defendant PAYNE
10  performed or referred surgeries comprising at least approximately
11  $10,850,000 of the total billed amount, for which Drobot, through
12  entities that he controlled, paid defendant PAYNE at least
13  approximately $450,000 in kickbacks.

14  E.   OVERT ACTS

15      16.  On or about the following dates, in furtherance of the
16  conspiracy and to accomplish the objects of the conspiracy, defendant
17  PAYNE and other co-conspirators known and unknown to the Grand Jury,
18  committed various overt acts within the Central District of
19  California, and elsewhere, including, but not limited to, the
20  following:

21      Overt Act No. 1:   On or about April 17, 2008, defendant PAYNE
22  met with Drobot to discuss receiving kickbacks from Drobot for
23  performing surgeries at Pacific Hospital.

24      Overt Act No. 2:   On or about May 19, 2008, defendant PAYNE
25  and Drobot Jr. discussed negotiating a deal where defendant PAYNE
26  would receive payments in exchange for performing surgeries at
27  Brotman Hospital.

28      Overt Act No. 3:   On or about June 18, 2008, defendant PAYNE

1   performed spinal surgery on patient A.H. at Pacific Hospital.

2   Overt Act No. 4:   On or about July 15, 2008, Drobot Jr. sent

3   an email to an unindicted co-conspirator stating that Drobot agreed

4   to pay IPM $60,000 to reimburse IPM for payments to doctors including

5   a $10,000 payment that had been made by IPM to defendant PAYNE.

6   Overt Act No. 5:   On or about July 17, 2008, Drobot Jr. sent

7   an email stating that $10,000 being reimbursed to IPM was for "stuff"

8   defendant PAYNE did in the last four weeks.

9   Overt Act No. 6:   On or about July 21, 2008, defendant PAYNE

10  (on behalf of Industrial Orthopedics) and Drobot Sr. (on behalf of

11  IPM) signed a Physician Office Dispensing Program Management

12  Agreement.

13  Overt Act No. 7:   On or about July 29, 2008, Drobot Jr. sent

14  an email to Drobot stating that defendant PAYNE would be performing a

15  spine surgery that week and would need to be paid $8,000.

16  Overt Act No. 8:   On or about July 29, 2008, defendant PAYNE

17  performed spinal surgery on patient E.R. at Pacific Hospital, and

18  used hardware manufactured by I2.

19  Overt Act No. 9:   On or about October 1, 2008, IPM sent to

20  Industrial Orthopedics a check for $20,000.

21  Overt Act No. 10:   On or about January 30, 2009, IPM sent

22  Industrial Orthopedics three checks totaling $26,000.

23  Overt Act No. 11:   On or about February 19, 2009, Drobot Jr.

24  sent an email to Drobot stating that IPM was taking losses by making

25  payments to generate spines for Pacific Hospital.

26  Overt Act No. 12:   On or about June 23, 2009, IPM sent to

27  Industrial Orthopedics a check for $10,000.

28  Overt Act No. 13:   On or about August 20, 2009, Drobot Jr. sent

1  an email to defendant PAYNE telling him that Drobot would be using a
2  collection agreement to pay him for surgeries performed.

3      Overt Act No. 14:   On or about January 20, 2010, I2 sent to
4  David H. Payne, MD, Inc. a check for $14,000.

5      Overt Act No. 15:   On or about June 29, 2011, I2 sent to David
6  H. Payne, MD, Inc. a check for $45,000.

7      Overt Act No. 16:   On or about January 20, 2012, I2 sent to
8  David H. Payne, MD, Inc. a check for $50,000.

9      Overt Act No. 17:   On or about June 5, 2012, I2 sent to David
10  H. Payne, MD, Inc. a check for $65,000.

11      Overt Act No. 18:   On or about July 18, 2012, defendant PAYNE
12  performed spinal surgery on patient J.L. at Pacific Hospital.

13      Overt Act No. 19:   On or about July 18, 2012, defendant PAYNE
14  performed spinal surgery on patient J.B. at Pacific Hospital.

15      Overt Act No. 20:   On or about March 12, 2013, Canedo sent
16  Drobot an email stating that defendant PAYNE was seeking to collect
17  $22,500 on surgeries that he performed and Drobot replied stating
18  that defendant PAYNE would be paid for performing surgeries under a
19  collection agreement.

20      Overt Act No. 21:   On or about March 28, 2013, Pacific Hospital
21  sent to Industrial Orthopedics a check for $16,597.44.

22
23
24
25
26
27
28

COUNT TWO

[18 U.S.C. §§ 1343, 1346]

17.   Paragraphs 1 through 11 and 13 through 16 of this Indictment, including all subparagraphs, are re-alleged and incorporated by reference as if fully set forth herein.

A.   THE SCHEME TO DEFRAUD

18.   Beginning on a date unknown but at least as early as in or around May 2008, and continuing through at least in or around April 2013, in Orange and Los Angeles Counties, within the Central District of California, and elsewhere, defendant DAVID HOBART PAYNE ("defendant PAYNE"), together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud: (a) patients of defendant PAYNE and other medical professionals of their intangible right of honest services in the performance of defendant PAYNE's and such other professionals' duties as treating physicians and medical providers by intentionally concealing the offer and acceptance of kickbacks paid to defendant PAYNE and other co-schemers; and (b) health care benefit programs as to material matters and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

19.   The fraudulent scheme operated, in substance, as set forth in paragraphs 13, 14, and 15 of this Indictment.

B.   USE OF AN INTERSTATE WIRE

20.   On or about June 8, 2012, within the Central District of California, and elsewhere, defendant PAYNE, for the purpose of executing the above-described scheme to defraud, transmitted and

10

caused the transmission of an item by means of wire communication in interstate commerce, namely, a wire communication through Federal Reserve Bank servers in Dallas, Texas, effectuating a transfer of $65,000 from I2's City National Bank account ending in 3965 in California to defendant PAYNE's Wells Fargo bank account ending in 1122 in California.

COUNT THREE

[18 U.S.C. § 1952(a)(3); 18 U.S.C. § 2]

21. Paragraphs 1 through 11, 13 through16, and 20 of this Indictment, including all subparagraphs, are re-alleged and incorporated by reference as if fully set forth herein.

22. On or about June 8, 2012, in Orange and Los Angeles Counties, within the Central District of California, and elsewhere, defendant DAVID HOBART PAYNE ("defendant PAYNE") used, aided and abetted the use of, and willfully caused the use of, a facility in interstate commerce, namely, the wire communication identified in paragraph 20 of this Indictment, with the intent to otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, namely, kickbacks in violation of California Business & Professions Code Section 650, California Insurance Code Section 750, and California Labor Code Section 3215, and thereafter performed and attempted to perform an act to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment, and

///

///

///

1  carrying on of such unlawful activity, in that in or about July 2012,

2  defendant PAYNE performed spinal surgeries at Pacific Hospital in

3  exchange for kickbacks.

4

5                                        A TRUE BILL

6

7                                        _____/S/_____
                                         Foreperson

8

9

10  SANDRA R. BROWN
    Acting United States Attorney

11

12

13  LAWRENCE S. MIDDLETON
    Assistant United States Attorney

14  Chief, Criminal Division

15  DENNISE D. WILLETT
    Assistant United States Attorney

16  Chief, Santa Ana Branch Office

17  JOSEPH T. MCNALLY
    Assistant United States Attorney

18  Deputy Chief, Santa Ana Branch Office

19  ASHWIN JANAKIRAM
    Assistant United States Attorney

20

    SCOTT D. TENLEY

21  Assistant United States Attorney

22

23

24

25

26

27

28

                                  13